Erica J. Van Loon (State Bar No. 227712)
evanloon@nixonpeabody.com
Stacy M. Boven  (State Bar No. 298734)
sboven@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, California 90071-3151
Tel: 415-984-8200
Fax: 415-984-8300

*Attorneys for Defendants*
Typical Gamer, Jogo Studios, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MM Games d.o.o.,<br><br>                    Plaintiff,<br><br>    vs.<br><br>Andre Rebelo-Soares d/b/a Typical Gamer, Jogo Studios, Inc.<br><br>                    Defendants. | Case No. 2:25-CV-01969<br><br>**DEFENDANTS TYPICAL GAMER AND JOGO STUDIOS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Judge: Hon. Geroge H. Wu<br>Complaint filed:  March 6, 2025<br><br>Date: June 12, 2025<br>Time: 8:30 am<br>Courtroom: 9D |

4910-7370-9619.17

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 12, 2025, or as soon thereafter as the matter may be heard before the Honorable George H. Wu, U.S. District Judge of the Central District of California, in Courtroom 9D of the United States Courthouse, 350 West 1st Street, Los Angeles, California, Defendants ANDRE REBELO-SOARES d/b/a TYPICAL GAMER ("Typical Gamer") and JOGO STUDIOS, INC. ("Jogo," and together with Typical Gamer, "Defendants") will and hereby do move this Court for the following order: order dismissing with prejudice the claims brought by Plaintiff for copyright infringement. (Dkt. No. 1.)

### Grounds for the Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6):  The Complaint filed by Plaintiff MM Games d.o.o. ("Plaintiff") shall be dismissed in its entirety, without leave to amend, because Plaintiff fails to state a claim for the sole cause of action for Copyright Infringement.

### Local Rule 7-3 Compliance

The parties met and conferred regarding the substance of this Motion as required by Local Civil Rule 7-3, including by participating in a telephonic conference on May 2, 2025.  The parties were unable to reach a solution that eliminated the necessity for this Motion.

This Motion is based on this Notice and the Memorandum of Points and Authorities provided below, the Proposed Order submitted herewith, the  Request for Judicial Notice filed at Dkt. 41, the pleadings and papers on file, and any other matters as the Court may consider.

In the alternative, the Court may consider the Declaration of Chad Mustard, Co-Founder and CEO of Defendant Jogo Studios, and Declaration of Michael Persson, Executive Vice President, Fortnite Ecosystem for Epic Games, Inc., submitted in support of Defendants' Opposition to Plaintiff's Motion for Preliminary

Injunction at Dkt. 40,  which Defendants submit are dispositive, and review this Motion as one for summary judgement under Federal  Rule of Civil Procedure 56, pursuant to Federal Rule of Civil Procedure 12(d).


Dated:  May 14, 2025                                Respectfully submitted,
                                                    NIXON PEABODY LLP


                                                    By:  */s/ Erica J. Van Loon*
                                                        Erica J. Van Loon
                                                        Stacy M. Boven
                                                        *Attorneys for Defendants*
                                                        Typical Gamer, Jogo Studios, Inc.

4910-7370-9619.17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 2:25-CV-01969

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   RELEVANT FACTUAL BACKGROUND ............................................. 2

    A.    Plaintiff Brings Infringement Claim 14 Months
After Demonstrating Awareness of Purported Infringement ................ 2

    B.    Plaintiff Pleads That Red vs. Blue Is A Popular
Videogame Genre ................................................................................. 2

    C.    Plaintiff Acknowledges That It Does Not Own
Epic Assets ........................................................................................... 5

    D.    No Element or Arrangement in Plaintiff's Island
Is Original ............................................................................................ 7

    E.    Plaintiff Did Not Adequately Disclose Preexisting
Work In Its Copyright Registration ..................................................... 7

III.  LEGAL STANDARD ............................................................................. 8

    A.    Fed. R. Civ. 12(b)(6): Failure to State a Claim ................................... 8

IV.   ARGUMENT .......................................................................................... 9

    A.    Plaintiff Fails to State a Claim for Copyright Infringement ................ 9

        1.    Plaintiff Claims Copyright Protection Over
Material That Is Not Subject to Copyright Protection
As A Matter of Law ................................................................. 10

            a.    Plaintiff Cannot Assert Copyright Over
An Entire Game Genre As A Matter of Law ................. 10

            b.    Plaintiff Cannot Assert Copyright Over
the Functional Requirements of a Videogame
As A Matter of Law ....................................................... 13

            c.    Plaintiff Cannot Assert Copyright Over
Non-Original Work As A Matter of Law ...................... 16

            d.    Any Material That Is Copyrightable Is
Owned By Epic, Or Another Party With
Preexisting Work ........................................................... 18

        2.    Plaintiff's Purported Copyright Registration
Is Invalid As A Matter of Law ................................................ 19

V.    CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdin v. CBS Broad. Inc.*,
  971 F.3d 57 (2d Cir. 2020) ................................................................. 12

*Apple Computer, Inc. v. Microsoft Corp.*,
  799 F. Supp. 1006 (N.D. Cal. 1992) .................................................. 14

*Aquarian Found., Inc. v. Lowndes*,
  127 F.4th 814 (9th Cir. 2025) ........................................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 8, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................. 8, 9, 17

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
  149 F. Supp. 3d 1167 (N.D. Cal. 2015) ........................................ 9, 12

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
  716 F. Supp. 3d 835 (C.D. Cal. 2024) ................................................. 9

*Boxfox, Inc. v. Peachbox Co.*,
  LLC, No. CV 21-02021-CJC(SKx), 2021 U.S. Dist. LEXIS 215637
  (C.D. Cal. Jul. 6, 2021) ..................................................................... 13

*Bratt v. Love Stories TV, Inc.*,
  713 F. Supp. 3d 847 (S.D. Cal. 2024) ............................................... 11

*Capcom U.S.A., Inc. v. Data East Corp.*,
  No. C 93–3259 WHO, 1994 WL 1751482 (N.D. Cal. Mar. 16,
  1994) ................................................................................................ 12

*Carmichael Lodge No. 2103 v. Leonard*,
  No. CIV S-07-2665 LKK/GG, 2009 WL 2985476
  (E.D. Cal. Sept. 16, 2009) ................................................................ 21

*Cody Foster & Co. v. Urb. Outfitters, Inc.*,
   No. 8:14-CV-80, 2015 WL 12698385 (D. Neb. Sept. 25, 2015) ...................... 20

*Corbello v. Valli*,
   974 F.3d 965 (9th Cir. 2020) ...................................................................... 10, 17

*Data E. USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) ...................................................................... 11, 12

*Design Basics, LLC v. Signature Construction, Inc.*,
   994 F.3d 879 (7th Cir. 2021) ............................................................................. 13

*Epikhin v. Game Insight N. Am.*,
   145 F. Supp. 3d 896 (N.D. Cal. 2015) .............................................................. 17

*Erickson v. Blake*,
   839 F. Supp. 2d 1132 (D. Or. 2012) .................................................................. 11

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ...................................................................................... 9, 17

*Frybarger v. International Business Machines Corp.*,
   812 F.2d 525 (9th Cir. 1987) ............................................................................. 12

*Hamilton Materials, Inc. v. Dow Chem. Corp.*,
   494 F.3d 1203 (9th Cir. 2007) ............................................................................ 9

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ........................................................................................... 17

*Incredible Technologies, Inc. v. Virtual Technologies, Inc.*,
   400 F.3d 1007 (7th Cir. 2005) .......................................................................... 13

*Interactive Network, Inc. v. NTN Communications, Inc.*,
   875 F. Supp. 1398 (N.D. Cal. 1995) ................................................................. 14

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................. 8, 18, 20

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .............................................................. 8, 18, 20

*Mitel, Inc. v. Iqtel, Inc.*,
   124 F.3d 1366 (10th Cir. 1997) ........................................................................ 14

*Patel Burica & Assocs., Inc. v. Jason Lin*,
   No. 8:19-CV-01833 CAS, 2020 WL 491467
   (C.D. Cal. Jan. 30, 2020) .................................................................................. 13

*Puckett v. Hernandez*,
   No. 216CV02199SVWAGR, 2016 WL 7647555
   (C.D. Cal. Dec. 21, 2016) ................................................................................. 16

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) .......................................................................... 10

*Roblox Corp. v. WowWee Grp. Ltd.*,
   660 F. Supp. 3d 880 (N.D. Cal. 2023) .............................................................. 20

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ............................................................................ 12

*Sobhani v. @Radical.Media Inc.*,
   257 F. Supp. 2d 1234 (C.D. Cal. 2003) ............................................................ 19

*Song v. Drenberg*,
   No. 18-CV-06283-LHK, 2019 WL 1998944
   (N.D. Cal. May 6, 2019) ................................................................................... 17

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ....................................................................... 8, 17

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................................ 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................... 8, 18, 20

*Texkhan, Inc. v. Dress Barn, Inc.*,
   No. CV 16-4528-MWF(GJSx), 2018 WL 5099729
   (C.D. Cal. Feb. 6, 2018) ................................................................................... 19

*Urban Textile, Inc. v. Cato Corporation*,
   No. 2:14-cv-06967-ODW(FFMx), 2016 WL 6804911
   (C.D. Cal., Apr. 1, 2016) .................................................................................. 21

*Weber Luke All., LLC v. Studio 1C Inc.*,
   233 F. Supp. 3d 1245 (D. Utah 2017) ............................................................... 16

*YZ Prods., Inc. v. Redbubble, Inc.*,
    545 F. Supp. 3d 756 (N.D. Cal. 2021) ................................................................ 17

**Federal Statutes**

17 U.S.C.
    § 101 ....................................................................................................................... 20
    § 102(b) ........................................................................................................... 10, 17
    § 409(9) ................................................................................................................. 19

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendants ANDRE REBELO-SOARES d/b/a TYPICAL GAMER, ("Typical Gamer") and JOGO STUDIOS, INC., ("Jogo," and together with Typical Gamer, "Defendants") move to dismiss the Complaint of Plaintiff MM Games d.o.o. ("Plaintiff"). Plaintiff's sole claim for copyright infringement must be dismissed because none of Plaintiff's work is entitled to copyright protection as a matter of law.

Plaintiff pleads that Epic Games, Inc. ("Epic") created the world-famous online videogame, Fortnite, and allows users like Plaintiff to participate in building a game before inviting others to play. Plaintiff concedes that Epic provides and owns Fortnite, the software users employ to build their games, and the individual building blocks for the games ("Epic Assets"). Plaintiff also pleads that Epic allows users to monetize their derivative Fortnite games, commonly called "Islands," through a revenue-sharing program based on Island popularity, with the most popular Islands grossing hundreds of thousands of dollars over time.

Plaintiff's allegations that it holds a valid copyright to its Island and that Defendants infringed on that copyright fail as a matter of law. Plaintiff cannot assert copyright over the idea of a red vs. blue combat game—a very popular genre of videogame that long precedes Plaintiff's work, dating back decades to government military games, other videogames that came before Fortnite, such as Halo and Atari, and an 18-season parody show of Halo called "Red vs. Blue" created by Rooster Teeth. Every feature/arrangement identified in Plaintiff's Complaint is either owned by Epic and a derivative thereof, existed in the public domain prior to the creation of Plaintiff's Island, is a functional necessity of the videogame, and/or is emblematic of the red vs. blue genre, such that it falls within the merger, scènes à faire, or public domain exceptions to copyright. Indeed, Epic's End User License Agreement expressly provides that Epic owns the Fortnite software and all in-game items and assets provided by Epic. Plaintiff pleads that it consented to this agreement prior to

building its Island, and incorporates the agreement in its Complaint.

Additionally, Plaintiff's copyright registration is invalid as a matter of law, because it did not adequately disclose preexisting work in its application (including which game elements were provided by and belong to Epic), despite acknowledging Epic's intellectual property rights in its Complaint.

For all of these reasons, as set forth below, Plaintiff has failed to state a valid claim for copyright infringement as a matter of law. Plaintiff cannot amend its Complaint to avoid these immutable facts that its copyright is invalid. As such, Plaintiff's Complaint should be dismissed without leave to amend.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Plaintiff Brings Infringement Claim 14 Months After Demonstrating Awareness of Purported Infringement

Plaintiff asserts that it launched its "Crazy Red Vs. Blue" Island on Fortnite on June 21, 2023, and later obtained a registration from the U.S. Copyright Office with a registration date of November 19, 2024. (*See* Dkt. 1, at ¶¶ 32, 39.) Plaintiff further claims that it submitted a DMCA takedown request in January 2024 requesting Epic to remove Defendants' "Super Red Vs. Blue" Island, but Epic considered and denied this request, and "Super Red Vs. Blue continues to be distributed and publicly displayed." (*Id*. at ¶ 67.) Plaintiff then waited 14 additional months to file its copyright infringement claim on March 6, 2025. (*Id*., *generally.*)

### B.    Plaintiff Pleads That Red vs. Blue Is A Popular Videogame Genre

Plaintiff admits that red vs. blue is a popular genre of videogames, pleading that there are "dozens of Fortnite Islands with Red Vs. Blue themes" and including an exemplary screenshot of at least 12 red vs. blue Islands. (Dkt. 1, ¶¶ 27-31, 36, 48.) Indeed, publicly available websites, subject to judicial notice and properly considered by this Court on a motion to dismiss, buttress the fact that red vs. blue is a popular genre of videogame. (*See* Dkt. 41, Request for Judicial Notice ("RJN") at Exs. A–D.) For example, a search of "red vs. blue" on the website fortnite.gg reveals

over a thousand results (the first page of search results shows 28 Islands, and there are over 390 pages of search results[1]  (last visited on May 14, 2025).



<hr>

[1]  https://fortnite.gg/creative?search=red+vs.+blue;
https://fortnite.gg/creative?search=red+vs.+blue&page=392

4910-7370-9619.17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 2:25-CV-01969



DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 2:25-CV-01969

(Dkt. 41, RJN at Ex. E.)

Moreover, the concept of red vs. blue genre in videogames dates back decades to Atari and Halo, as well as a show that ran for 18 seasons by Rooster Teeth, that parodied the very concept of red vs. blue combat games. (Dkt. 41, RJN at Ex. B–D.) It also appears in declassified military war game documents. (Dkt. 41, RJN at Ex. 1)

## C.   Plaintiff Acknowledges That It Does Not Own Epic Assets

Plaintiff concedes that Epic owns the game Fortnite, the software users employ to build their Islands in Fortnite, and the Epic Assets (in-game items provided by Epic).   (Dkt. 1, ¶¶ 27-31, 36, 48.)   Additionally, Plaintiff incorporated by reference in its Complaint Epic's End User License Agreement for Fortnite ("EULA"), Supplemental Terms to the EULA ("EULA Supplemental Terms"), and Fortnite Island Creator Rules ("Creator Rules," and collectively with EULA and EULA Supplemental Terms "Fortnite Island Agreements").   (Dkt. 1, at ¶¶ 27-28; Dkt. 41, RJN at Exs. I–IV.) The Fortnite Island Agreements state that Epic owns all of the software and assets, templates, and in-game items provided by Epic:

> 7. Ownership/Third-Party Licenses
>
> Epic and its licensors own all title, ownership rights, and intellectual property rights in the Software and Services. Features may be made available to you via the Software and Services that provide prefabricated templates or in-game items to use in connection with your UGC (defined below), however your use of a template does not give you any copyrights or other ownership in the template.

(Dkt. 41, RJN at Exs. I, IV (same).)   Software, Services, and UGC are defined as follows:

> 5. User Generated Content
>
> Epic may provide features through the Software or the Services that allow You to create, develop, modify, or contribute Content ("UGC"). . .

"UGC" includes, without limitation buildings, chat posts, character data, game customization, in-game constructions, replays, cinematics, scripts and programs, modes, gameplay, experiences, interactive features, and screenshots, music, sounds, sound recordings (and the musical works embodied therein) audiovisual combinations, musical works, animations, voice chat audio data, and other types of works (standalone or in combination).

16. Definitions

"Services" means any services made available to you through the Software, including services to acquire, maintain and use Game Currency and Content.

"Software" means the proprietary software application known as Fortnite, and any patches, updates, and upgrades to the application, and all related content and documentation made available to you by Epic under this Agreement, including but not limited to all software code, titles, themes, objects, characters, names, dialogue, catch phrases, locations, stories, artwork, animation, concepts, sounds, audio-visual effects, methods of operation, and musical compositions that are related to the application, and any copies of any of the foregoing. Software specifically includes all Game Currency and Content for which you have paid the associated fee or otherwise acquired a license under Section 4.

(Dkt. 41, RJN at Exs. I, IV (same).)

Plaintiff expressly claims that it had knowledge of these agreements prior to building its Island, by alleging:

When applying to become an official publisher, individuals accept the terms of both the Fortnite End User License Agreement ("EULA") and the Unreal Engine Fortnite Supplemental Terms. Both of these sets of terms prohibit individuals from infringing upon the intellectual property of others."

(*Id.* at ¶ 28.)   Plaintiff also alleges "Epic Games provides singular elements, but publishers combine those elements…"  (*Id.* at ¶ 31.)

### D.    No Element or Arrangement in Plaintiff's Island Is Original

Plaintiff's claim that it was the first to assemble Epic Assets into a classic red vs. blue Island is false, which is common knowledge to any person familiar with Fortnite and readily ascertainable through public websites.    For instance, red vs. blue Islands, and critically all of the specific elements and arrangement by Plaintiff, existed in the public domain prior to Plaintiff's Island—including other Islands within Fortnite. (Dkt. 41, RJN at Exs. E–G.) Specific examples of red vs. blue islands published before Plaintiff's Island, that contain all of the same basic elements and arrangement (color, size, shape of the arena where players battle/play in ("Combat Zone") with areas for players to regenerate after being eliminated ("Spawn Bases"), the placement of weapons, superpowers, vaults, and timers, the use of labels, and the creation of indented sides), are publicly available online, including Classic Red vs. Blue Island released on May 14th, 2023, [Island Code 2898-7886- 8847] and the MEGA Red vs. Blue [Island Code 6485-9203-4967], released on June 12, 2023. (Dkt. 41, RJN at Exs. E–G.)   These preexisting red vs. blue Islands and their publishing dates are publicly available online.  (*Id.*)

Moreover, many of the features identified by Plaintiff exist in thousands of other Islands because they are the result of the functional constraints of the Fortnite game software and the needs of the game—including the fact that Islands must be built on a square grid system as required by the Fortnite software, be intuitive for players, and simple to avoid creating "lag" or delays during the game due to memory constraints, etc. (Dkt. 41, RJN at Exs. I–K.)

### E.    Plaintiff Did Not Adequately Disclose Preexisting Work In Its Copyright Registration

Plaintiff admits its work is derivative, pleading that it built its Island using Epic's software, and that "Epic Games provides an initial set of assets for publishers

to use," including weapons and other items. (Dkt. 1, at ¶¶ 27-32, 36, 48.) Again, Plaintiff incorporated by reference in its Complaint the Fortnite Island Agreements and pleads that it consented to these Agreements. *Supra*, § 2.C. However, Plaintiff's Copyright Application fails to distinguish Plaintiff's alleged original work from Epic's preexisting intellectual property rights in Fortnite's templates, assets, and in-game items, despite demonstrating an understanding of the obligation to do so. (Dkt. 1-2, at 2.)

## III.    LEGAL STANDARD

### A.    Fed. R. Civ. 12(b)(6): Failure to State a Claim

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, a claim is properly dismissed if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor should the court accept as true allegations that are contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555.

"[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). If documents relied on or referenced in the complaint contradict allegations in the complaint, the document

controls and the allegations are no longer taken as true. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).

Thus, a motion to dismiss should be granted when a complaint fails "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Pursuant to Federal Rules of Civil Procedure 12(d), while a court's review on a motion to dismiss is limited to the pleadings, attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice, the Court may exercise its discretion to consider additional evidence by converting a dismissal motion into a summary judgment motion under Federal Rules of Civil Procedure 56[2]; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (finding the district court properly converted motions to dismiss to a motion for summary judgment pursuant to Rule 12(b)(6)).

## IV.   ARGUMENT

### A.    Plaintiff Fails to State a Claim for Copyright Infringement

To state a claim for copyright infringement, Plaintiff must plead (1) Plaintiff's "ownership of a valid copyright" and (2) copying of constituent parts of the work that are original. *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 841 (C.D. Cal. 2024); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "As part of the Ninth Circuit's 'extrinsic test' for substantial similarity, courts must determine whether any of the allegedly similar features of the works at issue are plausibly protected by copyright…This is a question of law." *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1173 (N.D. Cal. 2015) (internal citations omitted).

---

[2] Defendants submit that the Declaration of Chad Mustard, Co-Founder and CEO of Defendant Jogo Studios, and Declaration of Michael Persson, Executive Vice President, Fortnite Ecosystem for Epic Games, Inc., submitted in support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction at Dkt. 40 are dispositive as to Plaintiff's claims.

4919-7379-9619.17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 2:25-CV-01969

Here, Plaintiff's own pleadings reveal that none of Plaintiff's work is original or protected by copyright because it (1) is not separate from the preexisting works owned by Epic, and (2) falls within the merger, scènes à faire, or public domain exceptions to copyright. Additionally, Plaintiff's pleadings demonstrate that its copyright registration is invalid as a matter of law, because it failed to adequately disclose preexisting works. For these reasons, as set for the below, Plaintiff has failed to state a valid claim for copyright infringement as a matter of law. Plaintiff's Complaint must be dismissed.

### 1. Plaintiff Claims Copyright Protection Over Material That Is Not Subject to Copyright Protection As A Matter of Law

Plaintiff's claim must be dismissed, because Plaintiff's pleadings and publicly available materials properly considered on a motion to dismiss establish that Plaintiff is seeking to assert copyright protection over material that is not protected by copyright as a matter of law. Copyright protection does not extend to every element of a work simply because it is copyrighted; only those components that are original to the author are protected. *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020) (*citing Feist Publications*, 499 U.S. at 348; *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)); *see also* 17 U.S.C. § 102(b). Additionally, "ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject)" are not protectable elements, and "similarity only as to unprotected aspects of a work does not result in liability for copyright infringement." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Corbello,* 974 F.3d at 973–74; *see* 17 U.S.C. § 102(b).

### a. Plaintiff Cannot Assert Copyright Over An Entire Game Genre As A Matter of Law

It is firmly established that copyright protection does not extend to idea or

genre.  For example, in *Data E. USA*, the Ninth Circuit found that 15 videogame features, including the game procedure, common karate moves, background scenes, a time element, a referee, computer graphics, and bonus points, were not protectable by copyright because they "necessarily follow from the *idea* of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the *idea* of the karate sport." *Data E. USA, Inc. v. Epyx, Inc*., 862 F.2d 204, 209 (9th Cir. 1988); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1137 (D. Or. 2012) (citing same) (granting Defendant's motion to dismiss Complaint alleging copyright infringement); *see also Bratt v. Love Stories TV, Inc*., 713 F. Supp. 3d 847, 864 (S.D. Cal. 2024) (dismissing copyright claim because "ideas, such as a game concept, cannot be copyrighted") (quoting *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp.*, 611 F.2d 296, 300 n.1 (9th Cir. 1979)).  This is because copyright protection is not afforded to "elements of expression that necessarily follow from an idea, or to scènes à faire, i.e., expressions that are as a practical matter, indispensable or at least standard in the treatment of a given idea." *Data E. USA,* 862 F.2d at 208 (internal citations omitted).

The same is true here. Plaintiff cannot copyright the idea or genre of red vs. blue combat videogames.  Plaintiff admits in its Complaint that "red vs. blue" is a genre of combat games within Fortnite.  Specifically, in paragraph 48 of its Complaint, Plaintiff alleges that there are "dozens of Fortnite Islands with Red Vs. Blue themes" and in paragraph 36, Plaintiff includes a screen shot showing at least 12 other, similar red vs. blue Islands.  (Dkt. 1.)  Indeed, all of the features identified by Plaintiff—the color, size, and shape of the Combat Zone and Spawn Bases, the placement of weapons, superpowers, vaults, and timers, the use of labels, and the creation of indented sides—are standard expression of the red vs. blue combat genre that appear in thousands of Islands and are thus not subject to copyright protection. (Dkt. 1, ¶¶ 36, 48; Dkt. 41, RJN at Ex. E.)  While this is common knowledge among members of the Fortnite community, this fact can be easily confirmed by going to the

publicly available fortnite.gg[3] and searching for "red vs. blue" in the Island search bar; because such a search produces thousands of other Islands with the same features appearing in Plaintiff's purported copyright—including, as an example, Classic Red vs. Blue and Mega Red Vs. Blue which both predate Plaintiff's Island. (Dkt. 41, RJN at Exs. E–G.)  All of these Islands are publicly available online in their current form, with information on previous version available in historical archives as well. (*Id*.)

Plaintiff cannot assert copyright protection over its Island, because the game features and arrangement identified by Plaintiff (that are not already owned by Epic) are a standard manifestation of the red vs. blue genre. *See*, *e.g., Blizzard Ent., Inc*, 149 F. Supp. 3d at 1172-1175 (granting motion to dismiss copyright claims after plaintiffs failed to adequately established that their game characters were protected by copyright); *Satava v. Lowry*, 323 F.3d 805, 810-13 (9th Cir. 2003) (reversing the District Court's grant of preliminary injunction when copyright claim naturally flows from unprotectable ideas and standard elements.); *Data E. USA*, 862 F.2d at 207; *Capcom U.S.A., Inc. v. Data East Corp.*, No. C 93–3259 WHO, 1994 WL 1751482, at *15 (N.D. Cal. Mar. 16, 1994) (holding videogame's stereotypical fight characters and martial arts fighting techniques derived from martial arts are from the public domain and thus not afforded copyright protection because "[t]o do so would be commensurate to awarding Capcom a monopoly over a range of characters and moves that it did not create. It would also allow Capcom to lay proprietary claim to all reality-based fight games featuring human characters. Copyright law affords no such protection"); *Frybarger v. International Business Machines Corp.*, 812 F.2d 525, 528–30 (9th Cir. 1987); *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 71 (2d Cir. 2020) (affirming dismissal of copyright claim when works were not protectable because they were scènes à faire typical of the genre).  This is readily ascertainable by reviewing red vs. blue Fortnite search results and other red vs. blue Islands, like Classed Red vs. Blue and Mega Red vs. Blue that are publicly available online for

---

[3] https://fortnite.gg/creative?search=red+vs.+blue

1   anyone to view or play.  (Dkt. 41, RJN at Exs. E–G.)

2        Moreover, the red vs. blue genre long predates Plaintiff's Island and the

3   Fortnite game.  As declassified military documents show, the concept of red vs. blue

4   has been used for decades in the concept of military war games. (Dkt. 41, RJN at

5   Ex. 1.)     In the videogame context, the genre of red vs. blue appeared in

6   Atari's *Combat* videogame released in 1977, and was later popularized in Bungie's

7   *Halo: Combat Evolved* videogame which sold millions of copies after its release in

8   2001.  (Dkt. 41, RJN at Exs. A–B.)  Halo's red vs. blue game was so popular that it

9   inspired Rooster Teeth's web series parody of the Red vs. Blue Halo videogame "Red

10   vs. Blue," which premiered in 2003 and ran for 18 seasons (while initially published

11   online, it was later released on DVD and made available for streaming on Netflix and

12   other steaming platforms).  (Dkt. 41, RJN at Exs. B–D.)    Plaintiff cannot assert

13   copyright over the idea of a red vs. blue combat game as a matter of law.

14
15
          **b.**    **Plaintiff Cannot Assert Copyright Over the Functional Requirements of a Videogame As A Matter of Law**

16        Many of the classic red vs. blue features identified by Plaintiff are the result of

17   functional constraints of the game, and are thus not subject to copyright protection.

18   *See Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879, 889–891 (7th

19   Cir. 2021) (functional requirements and limited possibilities of architectural plans are

20   scènes à faire and thus not entitled to copyright protection); *Boxfox, Inc. v. Peachbox

21   Co.*, LLC, No. CV 21-02021-CJC(SKx), 2021 U.S. Dist. LEXIS 215637, *10 (C.D.

22   Cal. Jul. 6, 2021) (granting motion to dismiss copyright claim "to the extent that it

23   alleges [defendant] copied functional elements of its website because functional

24   elements are not protectable under copyright"); *Patel Burica & Assocs., Inc. v. Jason

25   Lin*, No. 8:19-CV-01833 CAS (ADSx), 2020 WL 491467, at *4 (C.D. Cal. Jan. 30,

26   2020) (granting  motion to dismiss when the claimed elements were functionally

27   required and therefore not protectable); *Incredible Technologies, Inc. v. Virtual

28   Technologies, Inc.*, 400 F.3d 1007, 1013-1015 (7th Cir. 2005) (affirming lower

court's finding that functional considerations of videogame controls are scènes à faire and thus not subject to copyright protection); *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1375 (10th Cir. 1997) (affirming the district court's denial of preliminary injunction based on scènes à faire exception ); *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1021, 1023 (N.D. Cal. 1992) (finding functional features not subject to copyright protection).   Because there are only a limited number of ways to build a red vs. blue Island in Fortnite, these basic ideas are not afforded copyright protection, and extending copyright in this instance would improperly grant Plaintiff a monopoly over the very concept of red vs. blue combat games.   *Id.*; *see also Interactive Network, Inc. v. NTN Communications, Inc.*, 875 F. Supp. 1398, 1404 (N.D. Cal. 1995).

As Plaintiff pleads, "Epic Games provides an initial set of assets for Publishers to use," (¶ 29), "Epic Games also provides tools to official publishers used to create Islands, including the "Unreal Editor for Fortnite" (¶ 27), and "Epic Games provides singular elements, but publishers combine those elements to create entire maps" (¶ 31) (Dkt. 1). Of course, placing those Epic Assets on one's Island must be done consistently within the requirements of the Epic software.

Epic publicly provides numerous guides online explaining how to use its software and build Islands.   In one example, "Level Design Best Practices[4]" Epic instructs users as follows:

- "make sure the flow of movement is smooth and intuitive…keep the action channeled properly, including action from any respawn points"

- "Try not to overfill open areas with props and terrain. There should be clear points of cover and easily identifiable landmarks that can be seen from a distance to help improve the ability to navigate and fight. This also reduces memory usage and improves performance…"

---

[4] https://dev.epicgames.com/documentation/en-us/fortnite-creative/level-design-best-practices-in-fortnite-creative  (last accessed on May 14, 2025)

- "When blocking out your island, each route and open area should have two primary conflict directions"

- "making the primary entry and navigation points oppose each other will allow small teams or groups to seamlessly fight without confusion"

- "Players should never have any doubts about how to navigate your island…Distinguishable features like these let players know their options without excessive thought or pause, which is important when they are getting used to new islands and combat environments. Initial readability of navigation is key to a smooth onboarding experience."

- "When building a structure, take into account the main points of entry and exit for the ground floor. In most situations, a structure should offer a temporary refuge to heal, rally, and loot."

- "Try to keep a balance in all directions of the island. Giving one side or entry point an unfair advantage or disadvantage can create lopsided gameplay that is frustrating…"

- "If you allow building on your island, design the environment to accommodate building tactically..."

These are the fundamental principles that inform how red vs. blue Islands are built, including of course, Plaintiff's Island.  Indeed, any person familiar with Fortnite understands that the features identified by Plaintiff exist in thousands of other Islands because they are the result of the functional constraints of the Fortnite game software and the needs of the game.  For example, many Islands have the square shape of the Combat Zone with Spawn Bases on because the Island is built on a square grid system as required by the Fortnite software, which dictates structures are built in a square fashion, players need an open arena space to play in, any design that is overly complicated will take too long to load initially and create "lag" or delays during the game due to memory constraints, etc.  (Dkt. 41, RJN at Exs. I–K.) Similarly, it is common practice to display weapons in Item Placers on the walls of Spawn Bases and in time-delayed vaults because of the functional need to display weapons to players, in a way that is consistent with the software's requirements for

building on a grid, leaving space open for game play, etc. (*Id.*) Likewise, the idea of placing timers and red and blue labels is a very common practice in Fortnite Islands, and is largely driven by functionality and accessibility needs (players need timers to play the game, labeling the team colors ensures that everyone can play, even those with red/blue color blindness, etc.). (*Id.*) In fact, another Epic-Provided guide that explains building arenas on this grid system, refers to red vs. blue as a "game mode" (Dkt. 41, RJN at Ex. J.) There are countless materials available online at https://dev.epicgames.com/ and instructional "how to build a red vs. blue Island" videos on YouTube chronicling that direct users on how to build an Island within the functional confines of the Epic software.[5] These game elements that are a necessary result of Fortnite's functional requirements are not subject to copyright protection as a matter of law.

### c. Plaintiff Cannot Assert Copyright Over Non-Original Work As A Matter of Law

Lastly, because the features at issue are standard manifestations of the red vs. blue genre, largely dictated by the functionality, these features and their general arrangement appear in many works that predate Plaintiff's Island—and it is black letter law that Plaintiff cannot assert copyright over non-original work. *Puckett v. Hernandez*, No. 216CV02199SVWAGR, 2016 WL 7647555, at *5 (C.D. Cal. Dec. 21, 2016), (granting motion to dismiss because phrases were "ordinary" and "commonly used" and therefore did "not possess the requisite originality to be copyrightable"); *Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1254 (D. Utah 2017) (dismissing copyright claim when claimed components were not

---

[5] *See, e.g.*, YosemiteSam08, How to Make RED vs BLUE | Fortnite Creative (Jun. 1, 2024), https://www.youtube.com/watch?v=nDDtF_AuQQA; JackjackHD, How to build a ADVANCED RED VS BLUE Map | Fortnite Creative – BEGINNER GUIDE Detailed Tutorial (May 7, 2021), https://www.google.com/search?q=how+to+build+red+vs+blue+fortnite+island&rlz=1C1GCEA_enUS1135US1135&oq=how+to+build+red+vs+blue+fortnite+island&gs_lcrp=EgZjaHJvbWUyBggAEEUYODIBCDM5NjlqMGo3qAIAsAIA&sourceid=chrome&ie=UTF-8#fpstate=ive&vld=cid:40550c3a,vid:83Oj_n9hIiI,st:0 (last accessed on May 12, 2025).

4910-7370-9619.17

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 2:25-CV-01969

original creative works); *Corbello,* 974 F.3d at 973; *Feist Publications,* 499 U.S. at 348; *Harper & Row, Publishers, Inc.,* 471 U.S. at 548; 17 U.S.C. § 102(b).  Again, Plaintiff's own pleading establishes that there are "dozens of Fortnite Islands with Red Vs. Blue themes" and that Epic provides both the software and the individual Assets used to build the game.  (Dkt. 1, ¶¶ 27-31, 36, 48.)  Moreover, publicly available information shows that the red vs. blue genre long predated Plaintiff's Island, and that all of the features in Plaintiff's Island appear in other Islands, some of which predate Plaintiff's Island, including for example, Classic Red Vs. Blue and MEGA Red Vs. Blue. (Dkt. 41, RJN at Exs. E–G.)  Of course, Plaintiff cannot claim copyright over non-original work.  *Corbello,* 974 F.3d at 973; *Feist Publications,* 499 U.S. at 348; *Harper & Row, Publishers, Inc.,* 471 U.S. at 548; 17 U.S.C. § 102(b).

There is nothing original about how Plaintiff assembled these features, which are a classic manifestation of the red vs. blue Island concept.  (Dkt. 41, RJN at Exs. E–G.)  While, Plaintiff summarily asserts otherwise in its Complaint, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."   *Sprewell*, 266 F.3d at 988.  Similarly, a Court should not accept as true allegations that are contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555.  *See Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944, at *3 (N.D. Cal. May 6, 2019) (granting Defendant's motion to dismiss copyright infringement claim and finding "[t]he Court, however, need not accept as true allegations contradicted by judicially noticeable facts"); *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 762 (N.D. Cal. 2021) (granting defendant's motion to dismiss plaintiff's cause of action for contributory copyright infringement); *Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d 896, 901 (N.D. Cal. 2015) (same).

In short, any person who plays Fortnite and is familiar with how Islands are built, would understand that every feature/arrangement identified by Plaintiff is owned by Epic, existed in the public domain prior to the creation of Plaintiff's Island,

is a functional necessity of the videogame, and/or is emblematic of the red vs. blue genre, such that it falls within the merger, scènes à faire, or public domain exceptions to copyright protection as a matter of law. Because Plaintiff cannot copyright an entire genre of videogame, that long predated its Island, Plaintiff's claims for copyright infringement must be dismissed without leave to amend. Plaintiff cannot amend its claims to change firmly established principles of copyright.

### d. Any Material That Is Copyrightable Is Owned By Epic, Or Another Party With Preexisting Work

Again, Plaintiff's own pleadings establish that Epic or another party is the owner over any copyrightable material in Plaintiff's Islands. Plaintiff pleads that it built its Island using Epic's software, and that "Epic Games provides an initial set of assets for publishers to use," including weapons and other items. (Dkt. 1, at ¶¶ 27-32, 36, 48.) Again, Plaintiff also incorporated by reference in its Complaint Epic's End User License Agreement for Fortnite, which it affirmatively accepted, which states that Epic and its licensors own all title, ownership rights, and intellectual property rights in the Software and Services" and that users are not given "copyrights or other ownership in the template" or in-game items provided by Epic.[6] (Dkt. 41, RJN at Exs. I, IV (same).) Plaintiff pleads that it consented to these Agreements prior to creating its Island. (Dkt. at ¶ 28; Dkt. 41, RJN at Exs. I, IV.) Thus, Plaintiff's own pleadings and the publicly available, incorporated by reference Fortnite Island Agreements, establish that Epic owns Fortnite, the software used to build Fortnite, and all of the Epic-provided Assets used to build Plaintiff's Island.

Plaintiff also alleges that there are "dozens of Fortnite Islands with Red Vs. Blue themes" and includes a screen shot showing at least 12 other, similar Red vs. Blue Islands. (*Id*. ¶¶ 36, 48.) Additionally, a simple online search shows that there

---

[6] "[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc,* 551 U.S. at 322; *Khoja,* 899 F.3d at 1002; *Knievel,* 393 F.3d at 1076-77.

are thousands of other red vs. blue Islands.  (Dkt. 41, RJN at Exs. E.)  Again, as discussed above, all of the features Plaintiff asserts are "original" appear in work that predates Plaintiff's Island, including other Islands within Fortnite (specifically for example, Classic Red Vs. Blue and Mega Red Vs. Blue), as well as in other videogames, shows, etc. (Dkt. 41, RJN at Exs. A–G.)

Thus, Plaintiff cannot, as a matter of law, assert copyright over individual elements of its Island, as these are owned by Epic.  Plaintiff also cannot claim copyright ownership over its assembly of these elements, because every aspect of its assembly preexisted in the public domain and falls within the merger and scènes à faire exceptions to copyright doctrine as a manifestation of the red vs. blue genre. Plaintiff cannot amend its pleading to change these facts, and as such its Complaint should be dismissed as a matter of law.

### 2. Plaintiff's Purported Copyright Registration Is Invalid As A Matter of Law

While copyright registration provides a presumption of validity, a defendant may rebut this presumption by offering some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement. *Aquarian Found., Inc. v. Lowndes,* 127 F.4th 814, 819 (9th Cir. 2025); *Texkhan, Inc. v. Dress Barn, Inc.*, No. CV 16-4528-MWF(GJSx), 2018 WL 5099729, at *4 (C.D. Cal. Feb. 6, 2018).   Again, Plaintiff cannot claim copyright over non-original works, or the derivatives of copyrights owned by Epic.  *Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1239-1241 (C.D. Cal. 2003).  Here, Plaintiff's copyright is invalid because Plaintiff failed to distinguish its supposed original work from preexisting work in its application, as required by 17 U.S.C. § 409(9), despite having knowledge of the preexisting work and demonstrating awareness of the requirement. (Dkt. 1, ¶ 39, Ex. B.)

Plaintiff admits its work is derivative, pleading that it built its Island using Epic's software, and that "Epic Games provides an initial set of assets for publishers

to use," including weapons and other items. (Dkt. 1, at ¶¶ 29-32); 17 U.S.C. § 101. Plaintiff also alleges that it agreed to the terms of the Fortnite Island Agreements (which are incorporated by reference in the Complaint[7]) prior to building its Island, and that these Agreements set forth Epic's ownership rights and prohibit intellectual property infringement.  (Dkt. 1, at ¶¶ 27-28.)  For example, Epic's End User License Agreement for Fortnite states:

> Epic and its licensors own all title, ownership rights, and intellectual property rights in the Software and Services. Features may be made available to you via the Software and Services that provide prefabricated templates or in-game items to use in connection with your UGC (defined below), however your use of a template does not give you any copyrights or other ownership in the template.

(Dkt. 41, RJN at Exs. I, IV (same)); *Tellabs, Inc,* 551 U.S. at 322; *Khoja,* 899 F.3d at 1002; *Knievel,* 393 F.3d at 1076-77.

However, Plaintiff's Copyright Application fails to distinguish Plaintiff's work from Epic's preexisting templates, assets, and in-game items.  (Dkt. 1-2, at 2.) Instead, Plaintiff's purported copyright excludes "third-party audiovisual elements," while claiming copyright over "all other audiovisual elements," without distinguishing what is "third-party" from what Plaintiff claims to own.  *Id.*

Such failure to adequately distinguish preexisting work renders a copyright registration invalid.  *See Roblox Corp. v. WowWee Grp. Ltd.*, 660 F. Supp. 3d 880, 891 (N.D. Cal. 2023) (citing 17 U.S.C. § 409(9) ("requiring application for copyright registration of derivative work to identify 'any preexisting work or works that it is based on or incorporates'"); *Cody Foster & Co. v. Urb. Outfitters, Inc.*, No. 8:14-CV-80, 2015 WL 12698385, at *6 (D. Neb. Sept. 25, 2015) (citing 17 U.S.C. §

---

[7] "[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc,* 551 U.S. at 322; *Khoja,* 899 F.3d at 1002; *Knievel,* 393 F.3d at 1076-77.

411(a) ("failing to disclose a pre-existing work can invalidate a copyright registration"); *Carmichael Lodge No. 2103 v. Leonard*, No. CIV S-07-2665 LKK/GG, 2009 WL 2985476, at *3 n.4 (E.D. Cal. Sept. 16, 2009)("the copyright claim must be limited to the new copyrightable authorship that has been added…the application should describe both preexisting material and the added material," and "distinguish old and new material.").

Here, Plaintiff's failure to distinguish any of the material it added to its derivation work by itself invalidates Plaintiff's purported copyright. *Urban Textile, Inc. v. Cato Corporation*, No. 2:14-cv-06967-ODW(FFMx), 2016 WL 6804911, at *5 (C.D. Cal., Apr. 1, 2016) (finding that the copyright registration was invalid because material omissions or errors were made in the registration application). Plaintiff's Complaint should be dismissed for this reason alone.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, without leave to amend.

Dated:  May 14, 2025                           NIXON PEABODY LLP


By: */s/ Erica J. Van Loon*
Erica J. Van Loon
Stacy M. Boven
*Attorneys for Defendants*
Typical Gamer, Jogo Studios, Inc.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Andre Rebelo-Soares d/b/a Typical and Gamer, Jogo Studios, Inc. certifies that this brief contains 6,177 words, which complies with the word limit of L.R. 11-6.1.

/s/ Erica J. Van Loon
Erica J. Van Loon, SBN 227712

1

## CERTIFICATE OF SERVICE

2          The undersigned certifies that a true and correct copy of the foregoing was

3   sent to all counsel of record on May 14, 2025.

4

5                                                    */s/ Erica J. Van Loon*
                                                     Erica J. Van Loon, SBN 227712

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4910-7370-9619.17

-23-