Erica J. Van Loon (State Bar No. 227712)
evanloon@nixonpeabody.com
Stacy M. Boven  (State Bar No. 298734)
sboven@nixonpeabody.com
Jacqueline Relatores (State Bar No. 341583)
jrelatores@nixonpeabody.com
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA  90071-3151
Telephone: (213) 629-6000
Facsimile:  (213) 629-6001

*Attorneys for Defendants and Counter-Plaintiffs*
Typical Gamer, Chad Mustard, and
Jogo Studios, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MM Games d.o.o., | Case No. 2:25-CV-01969-GW-JPR |
| Plaintiff, | |
| v. | **COUNTER-PLAINTIFFS' COUNTERCLAIMS AGAINST COUNTER-DEFENDANTS MM GAMES D.O.O AND MATEO MARTIC** |
| Andre Rebelo-Soares d/b/a Typical Gamer, Chad Mustard, and Jogo Studios, Inc. | |
| Defendants. | **JURY TRIAL DEMANDED** |
| | Judge: Hon. George H. Wu |
| | Complaint filed:  March 6, 2025 |
| Andre Rebelo-Soares d/b/a Typical Gamer, Chad Mustard, and Jogo Studios, Inc. | |
| Counter-Plaintiffs, | |
| v. | |
| MM Games d.o.o. and Mateo Martíc | |
| Counter-Defendants. | |

## COUNTERCLAIMS

Counter-Plaintiffs Andre Rebelo-Soares d/b/a Typical Gamer, Chad Mustard, and Jogo Studios, Inc., (collectively "Counter-Plaintiffs") through its undersigned counsel, hereby assert the following counterclaims against Counter-Defendant MM Games d.o.o. ("Plaintiff") and Counter-Defendant Mateo Martíc (together, "Counter-Defendants").

## THE PARTIES

1.      Counter-Plaintiff Jogo Studios, Inc. ("Jogo") is a corporation organized under the laws of the States of Delaware and Texas with its principal place of business at 16030 Ventura Blvd., Suite 240, Encino, California 91436.

2.      Counter-Plaintiff Chad Mustard is an individual residing in Lehi, Utah. Mr. Mustard is a Co-Founder and the Chief Operating Officer of Jogo.

3.      Counter-Plaintiff Andre Rebelo-Soares, professionally known as "Typical Gamer" ("Typical Gamer"), is an individual residing in Vancouver, British Columbia, Canada.  Typical Gamer is a Co-Founder, Chief Executive Officer, and Director of Jogo.

4.      Upon information and belief, Counter-Defendant MM Games d.o.o. ("MM Games") is a Croatian društvo s ograničenom odgovornošću (d.o.o.), with its principal place of business in Sesvete, Croatia.

5.      Upon information and belief, Counter-Defendant Mateo Martíc ("Martíc") is an individual residing in Sesvete, Croatia.  Upon information and belief, Martíc is the founder of MM Games.

## JURISDICTION & VENUE

6.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 because they arise under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

7.      The Court has personal jurisdiction over MM Games and Martíc because

they have each substantial contacts in the U.S., California, and this judicial district in particular.  MM Games and  Martíc purposefully directed their activities toward the United States and the State of California, including by advertising, marketing, uploading, and distributing works on the Fortnite platform that are marketed, accessed, and played by users within California and this judicial district, and by expressly aiming their wrongful acts at Jogo, whose principal place of business is located in this judicial district, as well as the citizens of California and this judicial district specifically.

8.      Upon information and belief, MM Games and Martíc derive substantial revenue from its commercial activities in California and from California-based users of its Fortnite Islands, including those accessed and played by residents of this judicial district.

9.      MM Games has purposefully availed itself of the benefits and protections of this Court and U.S. copyright law by asserting claims under the Copyright Act in this Court and engaging in commercial activity that targets California and U.S. consumers.

10.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to these Counterclaims occurred in this District, including MM Games' and Martíc's wrongful conduct.

## FACTUAL BACKGROUND

11.     Fortnite is a widely popular multi-player online videogame developed by Epic Games, Inc. ("Epic").  Fortnite was released on July 25, 2017, and has approximately 500 million registered players.

12.     Epic allows users to participate in designing their own videogames, commonly called maps or "Islands."  To do so, Epic provides two software tools: Fortnite Creative and Unreal Editor for Fortnite ("UEFN").  UEFN provides users with more powerful capabilities than Fortnite Creative, including allowing players to import their own assets and write their own code using a coding language called Verse.

13.     Along with Fortnite Creative and UEFN, Epic provides users with a number of Epic-owned assets ("Epic Assets") that can be used to build an Island

videogame, including both structural and functional components.  Epic Assets include, but are not limited to:

a.    Island templates: Premade Islands that a creator can use as a basis for their own Island or to study to learn how to create their own Island. The creator can then alter the template Island to achieve their desired design.

b.    Tiles: Blocks that form the structure of the Island including the floor and walls.  They are tiles (in the shape of squares) by default that line up with the "Grid" system that Fortnite's building mechanics are based on.

c.    Weapons: Gameplay ingredients creators can add to Islands that do damage and use ammo/charges/energy, or do melee damage.

d.    Items: Gameplay ingredients creators can add to Islands that perform some function such as (i) heal players; (ii) give players unique mobility; or (iii) can be collected as currency.

e.    Item placers: A device that gives you a way to place weapons or items in specific locations. The device acts as a container, but is shaped like the item registered. When a player interacts with the device, it grants the registered item to that player.

f.    Timers: A device that provides a way for players to keep track of the time something has taken, either for scoreboard purposes or to trigger actions. It can be configured in several ways, and act either as a countdown to an event that is triggered at the end, or as a stopwatch for an action that needs to be completed before a set time runs out.

g.    Grind rails: A flexible rail that a player can slide on to move quickly from one point to another.

h.    Vending machine: A device that can hold and spawn items, with an optional cost for each item.

i.    Vaults: A device a player can place in buildings on their Island, if creators want to create a heist mechanic in their game. May also be used in connection

COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

1    with timers.

2         j.    Props: Pre-made Epic Assets creators can use to build and dress up

3    their levels. This includes walls, floors, doors, and various objects like tables, chairs,

4    and plants.

5         k.    Prefabs: Pre-made arrangements of props to form buildings and

6    other structures.

7         l.    Galleries: A thematic collection of props, grouped together by

8    purpose and theme.

9         m.    Devices: Assets that creators can place in their projects to provide

10   gameplay functionality in their projects. For example, a "Player Spawner" device that

11   determines where a player will spawn during gameplay.

12        14.   Users who create and design Fortnite Islands must accept and agree to

13   several agreements, including the Fortnite End User License Agreement (the "Fortnite

14   EULA"), the Fortnite Island Creator Rules, and the UEFN Supplemental Terms to the

15   EULA (the "UEFN Supplemental Terms").

16        15.   Epic allows creators to monetize their Islands through an engagement-

17   based revenue-sharing model known as Creator Economy 2.0, wherein Epic shares 40%

18   of its revenue from in-game purchases.[1]  Engagement payouts are designed to reward

19   the creation of Islands that players enjoy and are based on metrics including player

20   popularity (*i.e.*, Islands that attract new players and re-engage lapsed players) and player

21   retention (*i.e.*, Islands where players return day-to-day and week-to-week).  The most

22   successful Islands can generate hundreds of thousands, or even millions of dollars in

23   revenue.

24        16.   Creators therefore have a monetary incentive to attract players to their

25   Islands.

26        17.   Red vs. blue Islands are an extremely common type of Island and gameplay

27

28   _____

[1] *See* https://www.fortnite.com/news/introducing-the-creator-economy-2-0.

style in Fortnite, featuring teams and Islands divided between a red and blue team. The first "red vs. blue" Island published on Fortnite around February 2019.

18.    In fact, the red vs. blue genre within the videogame context long predates Fortnite. For example, the red vs. blue genre appears in videogames such as Atari, released in 1977, and in Halo, released in 2001. Halo's red vs. blue game was so popular that it inspired a parody show created by Rooster Teeth that ran for 18 seasons. Red vs. blue combat even appears in declassified U.S. government military documents.

19.    Within Fortnite, red vs. blue Islands are very popular with players, attracting millions of players per month. As of May 5, 2025, over 10,000 creators have made over 23,000 total Islands titled "red vs. blue." Approximately 14 million active players played red vs blue Islands in the month of April 2025 alone. Red vs. blue Island are often featured on and highly ranked in Fortnite's Team Deathmatch category.[2]

20.    Creators of high performing Islands in the red vs. blue genre are therefore likely to earn large engagement payouts.

21.    Jogo is a cutting-edge videogame studio, pioneering game development in the User Generated Content (or Developer-Made Content) space that publishes top performing games on Fortnite and other gaming platforms. Jogo was founded by Typical Gamer and Chad Mustard, and employs a team of Verse engineers, game designers, and artists to build innovative gaming experiences utilizing Fortnite Creative and UEFN.

22.    Typical Gamer is a globally recognized videogame content creator and streamer, with over 25 million YouTube subscribers and billions of views across a variety of platforms. Typical Gamer was the first creator on Fortnite to reach one million followers. Typical Gamer supports Jogo's success by promoting their games to his massive fan base through videos, livestreams, and social media posts.

23.    Jogo's most popular Island is Super Red Vs. Blue [Island Code 2786-2114-

---

[2] *See* https://www.fortnite.com/categories/combat?lang=en-US.

COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

8349].  Jogo began developing Super Red Vs. Blue in August 2023 and published the Island on September 29, 2023.  Super Red Vs. Blue has become one of the most popular Islands on Fortnite with over 385,000,000 game plays, and is often in the top rankings of Fortnite's Combat and Team Death Match categories.[3]

24.    Jogo promotes Super Red Vs. Blue through Typical Gamer's videos, livestreams, and social media posts.  For example, Typical Gamer frequently streams and posts videos of his Super Red Vs. Blue gameplay. Because red vs. blue is a popular genre on Fortnite and there are hundreds of other red vs. blue Islands, Typical Gamer directs his viewers to find and play Super Red Vs. Blue specifically, in lieu of any other red vs. blue Islands, including, for example, by suggesting that users type in "SUPER" to the search bar on Fortnite.  The Super Red Vs. Blue Island is also advertised in the description along with its Island Code in each of Typical Gamer's videos.

25.    Jogo began building the base for its Super Red Vs. Blue Island by arranging various Epic Assets and other common game elements of Fortnite Islands, including a red and blue Combat Zone with red and blue labels identifying each side, Spawn Bases, weapon racks where players could pick up weapons to prepare for combat, a vault where players could get higher level weapons and Items after a timer expired, and grind rails.  Various combinations of these features form the basis of many Fortnite Islands and are not unique.

26.    Jogo then designed and added its own original components, including a unique ranking system, the "Super Wheel" that players can spin to randomize which weapons they might receive, the "Superpower Wheel" that randomizes which superpower a player might receive, a garage feature that allows players to access vehicles to drive in the game, custom "mounts" or animals that players could ride, custom vault aesthetics and animations, timed rewards, a separate diamond vault, a separate vault with a key pad where players could input a code to gain access to fun

---

[3] *See* https://fortnite.gg/island?code=2786-2114-8349.

COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

surprises, a voting system where players an submit feedback on the Island, a "bank" where players can exchange and store diamonds and gold.  Several of these original components have since been copied by other creators.

**<u>Super Wheel</u>**



**<u>Superpower Wheel</u>**



27.    Jogo continuously develops and releases updates to Super Red Vs. Blue, making changes to improve performance and gameplay and adding innovative new features to maintain player engagement and distinguish itself from the many other red vs. blue Islands.

## MM GAMES' AND MARTÍC'S ANTI-COMPETITIVE CONDUCT

28.     Counter-Defendants MM Games and Martíc have a history of anti-competitive conduct against creators in the red vs. blue genre of Fortnite Islands.

29.     Martíc has published several red vs. blue Islands, including Crazy Red Vs. Blue, Mega Red Vs. Blue, Squid Red Vs. Blue, Red Vs. Blue Rumble, Kpop Red Vs. Blue, Brian Red Vs. Blue, Kpop Demon Hunters Red Vs. Blue, and Red Vs. Blue Heroes[4].



30.     Martíc, who previously used different creator names or usernames on Fortnite including, "Boykaroo," and "BURGER.GAMES," even uses the creator name "rvb" to reflect the red vs. blue genre.

31.     Counter-Defendants' Crazy Red Vs. Blue Island [Island Code 2898-7886-8847], like Jogo's Super Red Vs. Blue Island, is one of the most popular Fortnite Islands and is regularly a top-ranked Island for Fortnite's Combat and Team Death Match categories.[5]

32.     On information and belief, Counter-Defendants' MM Games and Martíc

---

[4] *See* https://fortnite.gg/creator?name=rvb.
[5] *See* https://fortnite.gg/island?code=2898-7886-8847.

have engaged in anti-competitive behavior by trying to artificially boost the exposure and popularity of its own red vs. blue Islands, including its top-ranked Crazy Red Vs. Blue Island, to attract more Fortnite players.

*MM Games and Martíc's Abuse of the DMCA and False Copying Claims*

33.    On information and belief, Counter-Defendants have filed numerous DMCA takedown requests of other red vs. blue Islands based on false allegations. When a DMCA request is filed, Epic removes public access the Island, making it unavailable for players and negatively impacting player engagement and the creator's engagement payouts.[6]  Moreover, due to the nature of Fortnite's search and discovery algorithm, any removal from the search results, even for a short period of time, will have an immediate and long-term impact on Island popularity and revenue, potentially hundreds of thousands of dollars.

34.    For example, on information and belief, Counter-Defendants filed a false DMCA takedown request of an Island titled Red Vs. Blue Team Deathmatch[7] developed by a non-party to this litigation, not claiming any copyrighted material but rather an unspecified trademarked name.  This caused the Island to be unpublished and therefore unavailable to Fortnite players.

35.    On information and belief, Counter-Defendants also hired third parties to file false DMCA takedowns of other red vs. blue Islands developed by non-parties to this litigation which resulted in removal of those Islands.

36.    As Counter-Plaintiffs' primary competitor, MM Games and Martíc intentionally attempted to divert players from playing Counter-Plaintiffs' Super Red Vs. Blue and caused substantial harm to Counter-Plaintiffs.

37.    On January 31, 2024, Counter-Plaintiffs received a DMCA takedown request from Epic filed by Counter-Defendants.  Counter-Defendants vaguely described

---

[6] *See* https://dev.epicgames.com/documentation/en-us/fortnite/unpublishing-islands-in-fortnite-creative.

[7] Island Code 7600-3376-2859.

COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

the copyrighted work as the "original artwork" of Crazy Red Vs. Blue with a link to the Island on Fortnite's website.  However, Counter-Defendants did not identify any original artwork.

38.    On information and belief, Counter-Defendants' filed the DMCA takedown against Counter-Plaintiffs with the intent of damaging their main competitor, Counter-Plaintiffs, and not for the infringement of any original artwork; Counter-Defendants' anticompetitive maneuver was willful and intentional, with full knowledge of the reputational, functional, and financial damage it would cause.

39.    The invalidity of Counter-Defendants' DMCA take-down request was obvious.  Following the Counter-Defendants' malicious DMCA takedown request, Epic republished Super Red Vs. Blue.

40.    However, the short-term removal of Super Red Vs. Blue triggered by Counter-Defendants' DMCA takedown had already caused damage, and continues to damage Counter-Plaintiffs, including by negatively impacting Super Red Vs. Blue's popularity and standing within Fortnite, ultimately resulting in the loss of player engagement and associated engagement payout from Epic.

41.    Further underscoring Counter-Defendants' bad faith behavior is the fact that Counter-Defendants themselves copied game elements originally designed and published by Jogo in Super Red Vs. Blue, and later incorporated those copied elements into Crazy Red Vs. Blue.

42.    For example, Counter-Plaintiffs designed and published their vault before Counter-Defendants.   The image below shows the development of Counter-Plaintiffs'

vault, which occurred in December 2023:



Publicly available YouTube videos show that Counter-Plaintiffs' vault was published in Super Red Vs. Blue as early as December 22, 2023.[8]

43.    As shown in the images below, Counter-Defendants then developed their vault several months later in May 2024.  Thus, after their DMCA takedown request failed to permanently remove Super Red Vs. Blue, Counter-Defendants copied the timed vault from Super Red Vs. Blue and falsely asserted copyright ownership over it.



[8] *See* https://www.youtube.com/watch?v=IC300sn2Zio&t=13150s, streamed live on December 22, 2023.

COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

*MM Games and Martíc's Use of "Super" to Deceive Players*

44.    After the false DMCA failed to remove Super Red Vs. Blue from Fortnite, Counter-Defendants MM Games and Martíc then tried to siphon off Super Red Vs. Blue players by adding the term "SUPER" to the Crazy Red Vs. Blue Island title in July-August 2024 and to Martíc's creator name in September 2024.  Counter-Defendants were well aware that Counter-Plaintiffs heavily advertise that players can find Jogo's Super Red Vs. Blue by typing in "SUPER" and intentionally sought to divert Counter-Plaintiffs' players by making these key word changes that would mislead players away from Counter-Plaintiffs' Super Red Vs. Blue Island to Counter-Defendants'.

45.    On or around July 25, 2024, Counter-Defendants appended the words "SUPER POWERS" to the Crazy Red Vs. Blue Island title, intentionally misspelling "superpowers" so that the whole word "SUPER" would populate in users' search results.[9]



46.    This caused Crazy Red Vs. Blue to appear as the first red vs. blue Island in the search results, which is where Super Red Vs. Blue would typically appear when searching the term "SUPER", and where users would expect to click when trying to play Super Red Vs. Blue.



47.    Counter-Defendants reverted back to the original island title on August 12, 2024.

48.    On September 24, 2024, Martíc temporarily changed his creator name to SUPER-DOPE-RED in a blatant attempt to manipulate the Fortnite search and discovery algorithm. This again caused Crazy Red Vs. Blue to appear as the first Island when searching the term "SUPER", further diverting players searching for Super Red Vs. Blue to mistakenly access, play and, engage with Crazy Red Vs. Blue instead. This is just one example of Counter-Defendants' willful attempt to unfairly game the Fortnite system.



COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

49.     By misleading Fortnite players and players searching for Super Red Vs. Blue, Counter-Defendants improperly benefited from player engagement at the expense of Counter-Plaintiffs.

50.     Counter-Defendants' persistent anti-competitive conduct has caused substantial harm to Counter-Plaintiffs' business.

*Martíc's Public Harassment*

51.     At the same time, Martíc, in his personal capacity and in his capacity as CEO of MM Games, has taken to social media and public events hosted by Epic to harass Typical Gamer and make negative, derogatory comments about Typical Gamer, Mr. Mustard, other Jogo employees, and even members of Typical Gamer's fan community.

52.     Martíc's public campaign has been a long, concerted effort by Martíc to damage the reputations of Jogo and Typical Gamer.  Martíc is well aware that Super Red Vs. Blue is promoted by Typical Gamer, as the CEO and Co-founder of Jogo, through his streams, videos, and social media posts and thus benefits from Typical Gamer's popularity and massive fan base.  Martíc has therefore sought to damage the reputations of Typical Gamer and Jogo and deter users from playing Super Red Vs. Blue.

53.     Martíc has made it a habit to comment on social media posts by or about Typical Gamer.  For example, Martíc has posted defamatory comments calling Typical Gamer a "hypocrite" who is talented at "tricking kids" and implying that Jogo uses deceptive tactics in Super Red Vs. Blue to receive likes/favorites from players.  These statements are false. Martíc has also posted doctored images of Typical Gamer edited to harass or cause embarrassment to Typical Gamer.

54.     Martíc has also frequently commented on social media posts about Jogo's employees and Super Red Vs. Blue.  For example, Martíc once called Mr. Mustard a derogatory and homophobic term in Croatian on a social media post featuring Mr. Mustard as a Fortnite creator.  Martíc has gone so far as to call a Super Red Vs. Blue

COUNTERCLAIMS AGAINST MM GAMES D.O.O. AND MATEO MARTÍC

player and member of Typical Gamer's community a "pompous pig" in Croatian on a social media post.

55.    Martíc's actions came to a boiling point during Unreal Fest 2024, an annual event hosted by Epic where game developers, creators, and many others gather to learn more about updates to Epic's ecosystem.[10]    Unreal Fest 2024 occurred around September 30 to October 3, 2024 in Seattle.  Martíc registered for the event under a fake name and approached Typical Gamer, who was unaware of what Martíc looked like at the time.  Martíc posed as a genuine fan, introducing himself with a fake name and even requesting a photograph with Typical Gamer.  Martíc proceeded to attend every single presentation where Typical Gamer was a keynote speaker in addition to a presentation where Mr. Mustard was a keynote speaker.

56.    Near the end of Unreal Fest 2024, Typical Gamer walked by Martíc, who suddenly and aggressively yelled out "HEY TYPICAL GAMER, F*** YOU" in front of other Unreal Fest attendees.  Martíc and Typical Gamer had another confrontation the next day, where Martíc verbally accosted Typical Gamer in an aggressive and threatening manner, expressing frustration and resentment over Jogo's ability to market Super Red Vs. Blue through Typical Gamer.  When Typical Gamer pointed out some of Martíc's intentional anticompetitive behavior, asking Martíc about changing his creator name to SUPER-DOPE-RED, Martíc responded with a gender-identity joke.  When Typical Gamer then asked how they could resolve whatever issues Martíc had, Martíc suggested a boxing match, presumably sarcastically.

57.    Martíc acted with intent to cause harm to Typical Gamer's reputation and Jogo's business to deter players from playing Super Red Vs. Blue and thereby decreasing its rankings and player engagement.

58.    Martic's campaign of harassment and anti-competitive tactics contradicts that spirit of the creative and collaborative Fortnite creator economy and negatively

---

[10] *See* https://www.unrealengine.com/en-US/events/unreal-fest-seattle-2024.

impacts the Fortnite community.

## **FIRST CAUSE OF ACTION**

### **(Knowing Material Misrepresentation – 17 U.S.C. § 512(f))**

59.    Counter-Plaintiffs reallege and incorporate by reference paragraphs 1 through 58 as though fully set forth herein.

60.    On January 31, 2024, Counter-Plaintiffs received a DMCA takedown request from Epic filed by Counter-Defendants MM Games and Martíc which falsely asserted infringement of unidentified "original artwork" of the Crazy Red Vs. Blue Island.

61.    Counter-Defendants filed the DMCA request knowing there was no infringement of any "original artwork" in Counter-Plaintiffs' Super Red Vs. Blue Island.

62.    Counter-Defendants' DMCA takedown request caused Epic to remove or unpublish Jogo's Super Red Vs. Blue Island.

63.    Counter-Plaintiffs were injured as a result of Counter-Defendants' DMCA takedown request, including the resulting removal or disabling of content and the loss of players and player engagement, short term and long-term negative effects on Super Red Vs Blue's rankings and appearance in Fortnite's search results, and reputational harm.

64.    Counter-Plaintiffs bring this claim within the three-year statute of limitations pursuant to 17 U.S.C. § 507(b).

## **SECOND CAUSE OF ACTION**

### **(Unfair Competition — Cal. Bus. & Prof. Code § 17200 et seq.)**

65.    Counter-Plaintiffs reallege and incorporate by reference paragraphs 1 through 64 as though fully set forth herein.

66.    Counter-Defendants MM Games and Martíc have engaged in unlawful and unfair business acts and practices in violation of California Business and Professions Code § 17200 et seq. by, among other things, misleading and deceiving Fortnite players

seeking to play Super Red Vs. Blue into accessing, playing, and engaging with Crazy Red Vs. Blue instead; filing a false DMCA takedown request and causing the removal of Super Red Vs. Blue from Fortnite; and otherwise engaging in conduct that significantly threatens or harms competition among Fortnite creators.

67.    Counter-Defendants' conduct was intended to cause harm and has actually caused harm to Counter-Plaintiffs by, among other things, causing decreased player engagement with Super Red Vs. Blue, and thus the revenue generation from and popularity of Super Red Vs. Blue.

68.    Counter-Defendants' conduct constitutes unlawful business practices because it violates the Copyright Act, and thus is an unlawful practice under the UCL.

69.    Counter-Defendants' conduct constitutes unfair business practices because it offends public policy, is immoral, unethical, oppressive, and unscrupulous, and the utility of its conduct, if any, is outweighed by the gravity of the harm to competition and to Defendants.    Counter-Defendants' conduct significantly harms competition within the Fortnite creator community and the red vs. blue genre in Fortnite.

70.    As a direct and proximate result of Counter-Defendants' unfair competition, Counter-Plaintiffs have suffered and continue to suffer injury in fact and actual monetary loss, including lost revenue, diminished goodwill, and harm to business relations, professional reputation, and prospective opportunities.

71.    Counter-Plaintiffs seek restitution, injunctive relief, disgorgement of ill-gotten gains, and any other relief the Court deems proper under Cal. Bus. Prof. Code § 17200 et seq.

72.    This claim is timely brought within the four-year limitations period pursuant to Cal. Bus. Prof. Code. § 17208.

## THIRD CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage)

73.    Counter-Plaintiffs reallege and incorporate by reference paragraphs 1 through 72 as though fully set forth herein.

74.     Counter-Plaintiffs had and continue to have a prospective economic relationship with Epic, such that there is a probability of future economic benefit to Counter-Plaintiffs.  Jogo regularly receives engagement payouts from Epic due to high player engagement with Super Red Vs. Blue.  Any decrease in player engagement will result in a decrease in engagement payouts.

75.     Counter-Defendants MM Games and Martíc had knowledge of these prospective relationships and of Defendants' expectancy of future economic advantage.

76.     Counter-Plaintiffs intentionally and improperly engaged in acts designed to disrupt those prospective relationships, including by knowingly lodging false and/or misleading DMCA notices and by deceiving the public and the Fortnite player base as to the authorship, origin, and ownership of its Island.

77.     Counter-Defendants' intentional acts did in fact disrupt Counter-Plaintiffs' prospective relationships, including the loss of player engagement from the Fortnite player base and the loss of engagement payouts from Epic.

78.     As a proximate result of Counter-Defendants' wrongful and intentional interference, Counter-Plaintiffs have suffered economic harm and damages in an amount to be proven at trial.

79.     Counter-Defendants' conduct was wrongful by a legal measure independent of the interference itself, including violations of the Copyright Act and California Unfair Competition Law.

80.     This claim is timely brought under the two-year limitations period applicable to tortious interference claims.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Counter-Plaintiffs respectfully request that the Court:

1.     Enter judgment in favor of Counter-Plaintiffs on all Counterclaims;

2.     Award Counter-Plaintiffs all damages, including costs and attorneys' fees, caused by Counter-Defendants' false and misleading DMCA takedown request pursuant to 17 U.S.C. § 512(f);

3.     Award Counter-Plaintiffs restitution and injunctive relief pursuant to Cal. Bus. Prof. Code. § 17200 et seq. from Counter-Defendants' unlawful and unfair business acts and practices;

4.     Award Counter-Plaintiffs all damages, including costs and attorneys' fees, caused by Counter-Defendants' intentional interference of prospective economic advantage;

5.     Award Counter-Plaintiffs all pre-judgment and post-judgment interest, as appropriate;

6.     Grant such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Counter-Plaintiffs demand a trial by jury on all issues triable by right to a jury in this matter.

Dated:  November 13, 2025                    NIXON PEABODY LLP

By:   /s/ *Erica J. Van Loon*
        Erica J. Van Loon (State Bar No. 227712)
        evanloon@nixonpeabody.com
        Stacy M. Boven  (State Bar No. 298734)
        sboven@nixonpeabody.com
        Jacqueline D. Relatores (State Bar No. 341583)
        jrelatores@nixonpeabody.com
        NIXON PEABODY LLP
        300 S. Grand Avenue, Suite 4100
        Los Angeles, CA  90071-3151
        Telephone: (213) 629-6000
        Facsimile:  (213) 629-6001

        Attorneys for Defendants and Counter-Plaintiffs
        Typical Gamer, Chad Mustard, and Jogo Studios, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025, I filed and therefore caused the foregoing Counter-Plaintiffs' Counterclaims to be served via CM/ECF in the United States District Court for the Central District of California on all parties registered for CM/ECF in the above-captioned matter.


<u>/s/ Erica J. Van Loon</u>
Erica J. Van Loon